IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARON EVETTE GILBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 19-1392 |
| | ) |
| ANDREW SAUL | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 28th day of September, 2020, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: (1) failing to find that her physical impairment meets or medically equals the severity of Listing

1.02; (2) failing to find that her mental impairment meets or medically equals the severity of Listing 12.04; and (3) failing to rely on the testimony of a vocational expert ("VE") to determine whether a significant number of jobs exist in the national economy that Plaintiff could perform. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as her ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff asserts that the ALJ erred by failing to find that Plaintiff's hip impairment meets the severity of Listing 1.02 at Step Three of the sequential analysis. At the outset, the Court notes that the "Listings," see 20 C.F.R. Pt. 404, Subpt. P, App. 1, operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. § 416.925(a). Because the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. § 416.926.

In her decision in this case from October 11, 2018, the ALJ explained that Plaintiff's bilateral degenerative arthritis of the hips had been evaluated under Section 1.00, and that particular attention had been paid to Listing 1.02 (major dysfunction of a joint). (R. 14). One of the requirements of Listing 1.02 is that a claimant must demonstrate an "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A). The regulations define the inability to ambulate effectively as "an extreme limitation of the ability to walk, *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. . . . having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b). Additionally, the Social Security Act contains a 12-month durational requirement. See 42 U.S.C. § 423(d)(1)(A) ("Disability" is an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.).

Upon review of the relevant evidence of record, the ALJ noted that, although x-rays from early 2018 showed severe arthritic changes and Plaintiff had recently undergone surgery on her left hip, the record also revealed no treatment for a musculoskeletal impairment prior to that time and no complaints of hip pain prior to early 2018. (R. 14). The ALJ also explained that the record showed that Plaintiff used a walker on discharge from her hip replacement, but that within about a month, she had graduated to using a cane. (R. 14). The ALJ therefore concluded that there was "no extended period when the claimant was unable to ambulate effectively without an assist[ive] device." (R. 14). Upon review, the Court finds that the ALJ reasonably determined that Plaintiff's use of a cane did not limit the function of both upper extremities as required to show she could not ambulate effectively, nor did the use of any device for such a short period of

time fulfill the 12-month durational requirement.  See 20 C.F.R. § 416.905.  Therefore, because the ALJ reasonably concluded that Plaintiff did not show that she was unable to ambulate effectively, as defined in the Act, for the required 12-month period, the Court finds that the ALJ did not err in failing to find that Plaintiff's hip impairment did not meet the requirements of Listing 1.02.

As a related point, Plaintiff contends that the ALJ did not consider that she had problems with both of her hips in his residual functional capacity ("RFC") assessment.  (Doc. No. 11, at 4).  However, the Court notes that, after the ALJ specifically discussed Plaintiff's "bilateral" degenerative arthritis of the hips at Step 3, she went on to review in great detail Plaintiff's testimony and symptoms regarding her hip impairment, along with her course of treatment (including her expected second surgery) later on in her decision.  Moreover, the ALJ noted that Plaintiff reported to her surgeon two weeks following her surgery that her left hip pain was much improved and she was scheduling her right hip surgery.  (R. 24).  Then, in discussing how she determined Plaintiff's RFC, the ALJ clearly explained that since Plaintiff "received such benefit from the first surgery and could presume equal benefit from the right hip surgery, the undersigned has limited the claimant to unskilled sedentary exertion, noting that the surgery on the claimant's other hip should improve the claimant's physical functioning and possibly her exertional level."  (R. 24).  Therefore, the Court finds that the ALJ did not fail to consider Plaintiff's bilateral hip problems in assessing her RFC.

Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments do not meet the severity of Listing 12.04 (affective disorders) at Step Three of the sequential analysis.  Because the ALJ found that Plaintiff's bipolar disorder and her polysubstance abuse, reportedly in remission, are severe impairments, Plaintiff does have a condition that could potentially qualify as a disorder under such Listing.  (R. 14).  Here again, however, the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled, see 20 C.F.R. § 416.925(a), so the Listings' medical criteria are set at a higher level than the statutory standard for disability.  See Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  Thus, as with Listing 1.02, Plaintiff has the burden of proving such a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of that listed impairment.  See 20 C.F.R. § 416.926.

In this case, the ALJ explained in her decision that Plaintiff's mental impairments had been evaluated under Listing 12.04 (depressive, bipolar and related disorders).  (R. 14).  Upon review of the relevant evidence of record, however, the ALJ found that Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria" of that Listing.  (R. 14).  According to the statute, the required level of severity is met only when the requirements in paragraphs A and B of the Listing are satisfied, or when the requirements in paragraphs A and C of the Listing are satisfied.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  Here, there does not appear to be a question that the Paragraph C criteria are not satisfied, but Plaintiff contends that the ALJ erred in finding that the Paragraph B criteria are not satisfied.  As the ALJ explained in her analysis of this issue, in order to satisfy the paragraph B criteria, Plaintiff's impairments have to result in one extreme or two marked limitations in certain broad

areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (R. 14). Plaintiff states that the ALJ wrongfully concluded that her restrictions in such areas were either mild or moderate in nature, when she should have been found to have greater limitations. (R. 14-15).

The Court notes that the ALJ thoroughly discussed Plaintiff's symptoms and treatment in her decision, but she ultimately found that the Listing's requirements are simply not met or medically equaled. In fact, the ALJ clearly addressed evidence relevant to the above elements but concluded that Plaintiff's limitations include the following: mild limitation in understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself. (R. 14-15). The ALJ further found that the evidence fails to establish the presence of the "paragraph C" criteria, although, as noted, Plaintiff does not appear to disagree with this finding. (R. 15).

Plaintiff points to two medical opinions to support her argument. First, Plaintiff asserts that the opinion of Anne Rene Miller, Ph.D. from June 6, 2016 indicates that Plaintiff has marked restrictions in certain areas of mental functioning. (R. 370-77). Plaintiff states that Dr. Miller found four marked limitations in areas including carrying out instructions, making decisions, using judgment, and acting appropriately in work-like settings. (Doc. No. 11, at 6 n.2). The Court notes, however, that such areas do not specifically equate to the Paragraph B criteria, and that Dr. Miller's findings in those areas dealt with "complex" instructions and decisions (and concerned only interacting appropriately with the public). (R. 375-76). In fact, with regard to understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple work-related decisions, interacting appropriately with supervisors and co-workers, and responding appropriately to usual work situations and to changes in a routine work setting, Dr. Miller found Plaintiff to have only moderate limitations (meaning that she would have "more than a slight limitation in this area" but "is still able to function satisfactorily"). (R. 375-76). Dr. Miller's findings do not, therefore, support a finding of marked limitations in the broad areas of functioning of Paragraph B.

Plaintiff also claims that the opinion of Umapathy Channamalappa, M.D. supports a finding that Plaintiff's impairments meet the severity of Listing 12.04. Upon review of that opinion, however, the Court does not agree. (R. 623-27). Rather, among the findings in that opinion, Dr. Channamalappa found no evidence of mood lability and logical, linear, goal-directed, hopeful, and future-oriented thought processes. (R. 625). The opinion's findings also include no evidence of delusions, no impairment of significance in orientation level of alertness, no impairment related to attention and concentration, and adequate, appropriate and reasonable insight and judgment into illness. (R. 625). Furthermore, Dr. Channamalappa found that Plaintiff's depression seems "to be at least in part precipitated by her living situation and financial limitation and having to be dependent on others." (R. 626). Therefore, the Court does not find that Dr. Channamalappa's opinion demonstrates that Plaintiff's mental impairments meet the Paragraph B requirements.

4

Thus, after review of the ALJ's decision and the evidence of record, the Court finds no merit in Plaintiff's argument that the ALJ erred by failing to find that her mental impairments meet the severity of Listing 12.04.

Finally, Plaintiff argues that the ALJ erred by failing to rely on VE testimony to determine whether a significant number of unskilled, sedentary jobs exist in the national economy that Plaintiff can perform. It should first be noted that the Commissioner has promulgated the Medical-Vocational Guidelines ("the Grids") to assist in determining whether a claimant is disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2   The Grids reflect the analysis of various considerations, including the claimant's physical abilities, age, education, and work experience, and direct a finding of "disabled" or "not disabled" based on the combination of these factors. In order to determine whether a claimant is disabled, an ALJ may either apply the Grids or obtain VE testimony. See 20 C.F.R. §416.966. Because the Grids reflect the number of unskilled jobs that exist in the national economy at different exertional levels, reliance on the Grids is appropriate where a claimant has impairments that result exclusively in limitations in meeting the strength requirements of jobs. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00(b), (e).

In this case, because Plaintiff has the RFC to perform the full range of unskilled sedentary work, the ALJ properly relied on the Grids to determine whether a significant number of unskilled sedentary jobs exist in the national economy that Plaintiff could perform. (R. 25). Therefore, as the ALJ explained, Grid Rule 201.27—which applies to younger individuals such as Plaintiff with a high school education and unskilled or no past relevant work—directs a finding of "not disabled" in this case. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.27.

To the extent Plaintiff contends that the ALJ's RFC assessment did not account for her need to use a cane or her right hip limitation and need for future surgery, as discussed, supra, the Court finds that the ALJ properly considered such limitations in her decision. It should be noted that a claimant's RFC is the most that that individual can do despite his or her limitations, and the determination of a claimant's RFC is solely within the province of the ALJ. See 20 C.F.R. §§ 416.927(d)(2), 416.945(a). In formulating a claimant's RFC, the ALJ must weigh the evidence as a whole, including medical records, medical source opinions, a claimant's subjective complaints, and descriptions of his or her own limitations. See 20 C.F.R. §§ 416.927, 416.929, 416.945. In this case, after reviewing all the relevant evidence, the ALJ determined that, due to Plaintiff's impairments, she is capable of performing sedentary unskilled work without additional limitations. (R. 15). In reaching her conclusions here regarding Plaintiff's RFC, the ALJ reviewed and engaged in extensive discussion of a great deal of evidence, including medical opinions of record, Plaintiff's treatment notes, and Plaintiff's testimony and subjective complaints. (R. 14-24).

With regard to Plaintiff's argument that the ALJ did not consider Plaintiff's need to use a cane and her right hip problems, the Court notes that, upon review of the record, the evidence shows that Plaintiff used a cane at her follow-up appointment one month after her surgery. (R. 610). The record does not show, however, that Plaintiff was expected to need to use a cane for an extended period of time, nor does the evidence show that she was not expected to fully

5

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

s/Alan N. Bloch<br>United States District Judge

ecf:         Counsel of record

---

recover from her surgery.  Instead, Plaintiff's treatment notes indicate that her surgeon found her to be "doing well" and was "much better than she was before surgery."  (R. 610).  Additionally, the ALJ noted that, since Plaintiff had received such benefit from her first surgery, equal benefit could be presumed from her right hip surgery.  (R. 24).  The ALJ therefore explained that she was limiting Plaintiff to unskilled sedentary exertion, and she noted that surgery on Plaintiff's right hip "should improve [her] physical functioning and possibly her exertional level."  (R. 24).  Finally, the Court notes that the ALJ's RFC assessment provides for sedentary work, which consists primarily of sitting, and would permit use of a cane for walking, if needed.  See 20 C.F.R. §416.967(a).  Therefore, the Court finds no merit in Plaintiff's contention that the ALJ's RFC assessment did not account for her use of a cane or her right hip impairment.

As to any additional arguments mentioned summarily by Plaintiff in her brief, the Court finds that she has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, after careful review of the record, the Court finds that the ALJ did not err in finding that Plaintiff's physical and mental impairments did not meet or medically equal the requirements of the Listings.  Additionally, the Court finds that the ALJ did not err in relying on the Grids to find that a significant number of unskilled sedentary jobs exist in the national economy that Plaintiff could perform.  Accordingly, the Court affirms.